UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| In re: | Case No. 23-41234-357 |
| JEFFREY R. BARTON, | Chapter 7 |
| Debtor. | Related to Doc. 19 |

### MEMORANDUM OPINION

Debtor Jeffrey R. Barton and his non-debtor wife, Jane, own Jeff Barton Trucking LLC (the "Company"). The Debtor claims that they hold their ownership interest in the Company as tenants by the entirety, and so he seeks to exempt the interest from his bankruptcy estate under 11 U.S.C. § 522(b)(3)(B).[1] Tracy A. Brown, the Chapter 7 Trustee, filed an objection to the claim of exemption (the "Objection"). For the reasons stated below, I will sustain the Objection.

I.  **Factual and Procedural Background**

The Debtor and Jane formed the Company on March 7, 2011.[2] They executed an operating agreement on that date (the "Operating Agreement"). The Operating Agreement remains in effect and has not been amended.

Several provisions of the Operating Agreement are particularly relevant to this dispute. They include the following:

- The agreement defines each of the Debtor and Jane as a "Member."

- Each of the Debtor and Jane is to make an initial capital contribution of $1,000.

---

[1] The Debtor initially claimed the exemption under two Missouri statutes: Sections 513.475.2 and 513.427. The parties now agree that Section 522(b)(3)(B) of the Bankruptcy Code governs, and they have litigated this dispute under that statute.

[2] To avoid confusion, I refer to Mrs. Barton as Jane. No disrespect is intended.

- Management of the Company is vested in the Members, each of whom is given a vote on any matter. At least 51% of the Members must be present at any meeting at which binding action is taken.

- The profits and losses of the Company accrue to the Members in proportion to the balances of their capital accounts. Their capital accounts may change over time as a result of additional contributions by a Member, withdrawal of capital by a Member, or a Member's election to roll over his or her share of profits for a particular year. Withdrawal of capital requires the unanimous consent of the other Members.

- A Member may voluntarily withdraw from the Company after the Company has been in existence for six months. A Member may be involuntarily withdrawn or expelled from the Company for a number of reasons, including death, incompetency, and wrongful conduct.

- Following a voluntary or involuntary withdrawal of a Member, the remaining Members have the right to purchase the interest of the withdrawn Member. The purchase price is based on the value of the assets and liabilities of the Company, the withdrawn Member's proportional interest in profits and losses, and any liabilities the withdrawn Member owes to the Company.

- Upon dissolution of the Company, its net assets are to be distributed to Members in proportion to their interests in profits and losses.

- The Company is intended to be treated as a corporation for purposes of federal and state income taxes.

At a hearing held on October 18, 2023, the Debtor testified that the Operating Agreement was a form document that he located on the Internet. He finalized the document without the assistance of an attorney, and he and Jane executed it. He stated that he did not understand the significance of the Operating Agreement and that the Company does not maintain capital accounts or drawing accounts for its members. The Debtor indicated that he established the Company for estate-planning purposes; in particular, he wanted Jane to be able to dissolve the Company on his death without involving the probate court.

The Debtor also offered into evidence copies of his and Jane's joint federal and state tax returns for 2022. The federal return includes a Schedule C, captioned "Profit or Loss from Business (Sole Proprietorship)." That schedule identifies the business as Jeff Barton Trucking LLC, with its employer identification number, and the proprietor of the business as Jeffrey R.

Barton. The business suffered a net loss of $7,866 in 2022. The Missouri return does not separately identify the Company. However, the form requires a married couple filing jointly to divide their adjusted gross income between the two spouses. The Bartons allocated a loss of $7,866 to the Debtor and all of the couple's other income to Jane.

II.   Analysis

The filing of a bankruptcy petition creates an estate comprised of "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a). A debtor may then exempt certain property from the estate. *See id.* § 522. Missouri has opted out of the federal exemptions under Section 522(d). *See* § 513.427, RSMo. Exemptions under Section 522(b) remain, including one that permits a debtor to exempt any interest in property that is held in a tenancy by the entirety, to the extent that the interest is exempt from process under non-bankruptcy law. *See* 11 U.S.C. § 522(b)(3)(B).

If a debtor holds an asset as a tenant by the entirety, the trustee may administer the asset only to satisfy joint debts of the debtor and the non-debtor spouse. *See In re Garner*, 952 F.2d 232, 235 (8th Cir. 1991); *In re Charles*, 123 B.R. 52, 55 (Bankr. E.D. Mo. 1991). The asset is otherwise exempt; the trustee cannot use it to pay debts on which the spouse is not obligated. *See Charles*, 123 B.R. at 55. This result is consistent with the rights of creditors under state law: joint creditors may execute on entirety property, but creditors of only one spouse may not. *See In re Van Der Heide*, 164 F.3d 1183, 1184 (8th Cir. 1999); *Otto F. Stifel's Union Brewing Co. v. Saxy*, 201 S.W. 67, 71 (Mo. 1918).

The Trustee has the burden of proof to show that the Debtor did not properly claim the entirety exemption. Fed. R. Bankr. P. 4003(c); *In re Shields*, 586 B.R. 315, 318 (Bankr. W.D. Mo. 2018).

A.   Tenancy by the Entirety in Missouri

"Tenancy by the entirety is a form of ownership in property created by marriage in which each spouse owns the entire property, rather than a share or divisible part." *Rinehart v. Anderson*, 985 S.W.2d 363, 367 (Mo. Ct. App. 1998). A tenancy by the entirety is created when spouses acquire property and the four unities are present: interest, title, time, and possession. *See Ronollo v. Jacobs*, 775 S.W.2d 121, 123 (Mo. 1989).

The unity of interest requires spouses to take "one and the same interest." *Green Hills Production Credit Association v. Blessing*, 844 S.W.2d 5, 7 (Mo. Ct. App. 1992). Accordingly, each spouse must be "seized of the whole or entirety and not a share, moiety or divisible part." *Ronollo*, 775 S.W.2d at 123. Any requirement that the spouses "share equally" in an asset

destroys the unity of interest. *Green Hills*, 844 S.W.2d at 7; *see also Keller v. Keller*, 92 S.W.2d 157, 162 (Mo. 1936) ("share and share alike" in a will creates tenancy in common, not tenancy by the entirety).

As in a joint tenancy with a right of survivorship, ownership of an asset held by the entirety continues in the surviving spouse. *See* 2 *Tiffany Real Property* § 430 (3d ed. 2023). When one spouse dies, "the surviving spouse continues to hold title to the property." *Rinehart*, 985 S.W.2d at 367; *see also Baker v. Lamar*, 140 S.W.2d 31, 35 (Mo. 1940). Indeed, no new title is passed from the deceased to the surviving spouse, because each of them originally owned the whole all along. *See Nelson v. Hotchkiss*, 601 S.W.2d 14, 20 (Mo. 1980).

Property owned jointly by spouses is presumed to be held in a tenancy by the entirety. *See Feinberg v. Feinberg*, 924 S.W.2d 328, 331 (Mo. Ct. App. 1996); *In re Story*, 536 B.R. 279, 283 (Bankr. E.D. Mo. 2015). This presumption has been applied to interests in a partnership, *see Feinberg*, 924 S.W.2d at 331, assets of an unincorporated business, *see Capital Bank v. Barnes*, 277 S.W.3d 781, 782 (Mo. Ct. App. 2009), real property conveyed to spouses, *see Ronollo*, 775 S.W.2d at 123, and brokerage accounts, *see In re Haines*, 528 B.R. 912, 924 (Bankr. W.D. Mo. 2015).

In light of these precedents, it seems likely that the Missouri courts would apply the entirety presumption to an LLC membership interest that is jointly owned by spouses. But the Debtor has not presented any authority for the proposition that spouses who individually own items of property that are merely related—such as adjacent parcels of farmland or condominium units in the same building—are presumed to own that property jointly, much less as tenants by the entirety.

This dispute ultimately turns on that distinction. Because the record demonstrates that the Debtor and Jane have separate, not joint, membership interests in the Company, the presumption does not come into play. The Bartons do not hold their interests in the Company as tenants by the entirety.

    **B.**    **The Operating Agreement Demonstrates That the Bartons Do Not Have a Tenancy by the Entirety.**

When an interest in property is established by a valid written agreement, its terms determine the nature of the interest. *See Commerce Trust Co. v. Watts*, 231 S.W.2d 817, 822 (Mo. 1950) (reviewing deposit agreement to determine whether bank account was held in joint tenancy); *Keller*, 92 S.W.2d at 162 (interpreting will to determine whether property was conveyed to tenants by the entirety); *In re Catalano*, No. 17-45162, 2021 WL 1017382, at *3 (Bankr. E.D. Mo. Mar. 16, 2021) (reviewing deed and sale contract to determine whether real

estate was conveyed to one spouse or both). The dispute in this case concerns a form of personal property: a membership interest in a limited-liability company. *See* § 347.115, RSMo. Because the relationship among the Company, the Debtor, and Jane was established by and continues to be governed by the Operating Agreement, *see id.* § 347.081, its contents guide my analysis.

The agreement plainly establishes that the Debtor does not hold his interest in the Company in a tenancy by the entirety with Jane. As an initial matter, there is no unity of interest. The agreement establishes separate and distinct equity interests in the Company, some owned by the Debtor and some owned by Jane. The Debtor and his spouse are listed as separate members in the Operating Agreement. They each may cast a separate vote on matters for consideration by the members, rather than casting a single vote as husband and wife. They were obligated to make separate capital contributions of $1,000 each, giving each of them a 50% interest in the profits and losses of the Company. And their proportional interests are subject to change over time, because they have separate capital accounts that could result in the Debtor's interest increasing or decreasing relative to Jane's. In short, although the spouses *collectively* own all of the membership interests in the Company, they do not *each* own all of the membership interests, as a tenancy by the entirety would require. *Compare In re Romagnoli*, 631 B.R. 807, 812 (Bankr. S.D. Fla. 2021) (operating agreement identified spouses as owners, designating them "Tenants by Entireties 100%"), *with In re Lemanski*, 640 B.R. 910, 912 (Bankr. E.D. Mich. 2022) (operating agreement specified distinct capital contributions and ownership, such that spouses "did not own any membership interest jointly").

In addition, the terms of the Operating Agreement are inconsistent with the continuation of ownership by a surviving spouse that is characteristic of a tenancy by the entirety. This problem flows primarily from the lack of joint ownership discussed above: because Jane does not own the Debtor's membership interests during his life, she cannot continue to own them following his death. The Operating Agreement provides additional detail, authorizing a member to purchase the interest of a deceased member from that member's executor or administrator. This option is inconsistent with the surviving spouse's pre-existing possession of the entire asset in a tenancy by the entirety. *See Rinehart*, 985 S.W.2d at 367.

### C. The Debtor's Extrinsic Evidence Does Not Change the Result.

As discussed above, the Debtor presented extrinsic evidence at the hearing about his intent in forming the Company, the operation of the Company since that time, and the Bartons' 2022 tax returns. The Trustee objected, arguing that this extrinsic evidence was barred by the parol evidence rule. I admitted the evidence, subject to later consideration of the effect of the rule on my analysis. *See State ex rel. Missouri Highway & Transportation*

*Commission v. Maryville Land Partnership*, 62 S.W.3d 485, 489 (Mo. Ct. App. 2001) ("The parol evidence rule does not prevent relevant parol evidence from being admitted; but prohibits the trier of fact from using that evidence to vary, alter or contradict the terms of a binding, unambiguous and integrated written contract.").

### 1. The Debtor's contemporaneous intent does not override the Operating Agreement.

The Debtor testified that by establishing the Company, he hoped to allow Jane to dissolve the Company on his death and avoid probate court. According to the Debtor, only a tenancy by the entirety could accomplish this goal.

Whether the parol evidence rule applies to this evidence of the Debtor's intent is a complex question. The "ordinary rules of contract law" apply to the operating agreement of a limited-liability company. *Nicolazzi v. Bone*, 564 S.W.3d 364, 370 (Mo. Ct. App. 2018). In some disputes about the nature of the property interest held by co-owners, the courts have rigorously enforced the parol evidence rule. *See Commerce Trust*, 231 S.W.2d at 820-21 (bank account held by joint tenants). And yet parol evidence may be admissible in other circumstances that are not obviously distinguishable. *See, e.g.*, *Milligan v. Bing*, 108 S.W.2d 108, 110 (Mo. 1937) (permitting children to introduce parol evidence to demonstrate that parents did not hold property by the entirety); *McVey v. Phillips*, 259 S.W. 1065, 1067 (Mo. 1924) (considering parol evidence to determine that deed establishing tenancy in common should be reformed to create joint tenancy). The analysis is further complicated by the Debtor's argument that the Trustee is a stranger to the contract who does not have standing to invoke the parol evidence rule. *See American Bank v. Wegener*, 776 S.W.2d 922, 925 (Mo. Ct. App. 1989); *but see Slinkard v. Lamb Construction Co.*, 225 S.W. 352, 352 (Mo. 1920) (permitting litigants in privity with contracting parties to object to parol evidence).

As I explain below, the Debtor's evidence of intent does not alter the outcome of this dispute. In the interest of simplicity, I will assume, without deciding, that the parol evidence rule does not preclude my consideration of this evidence.

The Debtor's testimony regarding his intent was credible, but it does not demonstrate that his property interest is something other than the interest he created by contract. As an initial matter, the premise of the Debtor's argument, that a tenancy by the entirety is necessary to fulfill the Debtor's estate-planning goals, does not appear to be accurate. Either a joint tenancy with a right of survivorship or a tenancy by the entirety would have permitted Jane to become the sole owner of all of the membership interests of the Company on the Debtor's death. *See* 2 *Tiffany Real Property* §§ 419, 430 (3d ed. 2023); 5 Missouri Practice Series, *Probate Law and Practice* § 12 (3d ed. 2023) ("Joint tenancies with right of survivorship and tenancies

by the entireties are without doubt the most common extra-probate methods used to transfer property at death.").

It is the distinction between these two forms of ownership, joint tenancy and tenancy by the entirety, that is critical to the current dispute. The interests would be exempt only if they were held by the entirety. The Debtor's intent in 2011 does not address the pertinent difference between the two tenancies: the rights of creditors while both spouses are living.

Perhaps the Debtor's point is simpler. Although he has not formulated his argument in quite this way, he may be hoping to use his extrinsic evidence merely to demonstrate some form of joint ownership, at which point the presumption would take over and lead to a conclusion that the nature of the joint ownership is a tenancy by the entirety. Even when it is framed this way, I do not find the evidence sufficiently compelling to override the Debtor's use of a completely different structure, involving distinct ownership of distinct items of property by each of the Bartons. And this exemption dispute would be a particularly inappropriate vehicle for altering the nature of their ownership interests from what is set forth in the Operating Agreement. A determination that the Debtor's interest in the Company is something other than ownership of a discrete 50% of the Company's membership interests (perhaps modified by later activity in the capital accounts) would affect non-parties, including Jane and the Company itself. Moreover, if I were to tinker with the distribution of ownership under the Operating Agreement, I would have to contemplate other modifications to the document, lest the Bartons be left with an agreement that is incoherent or an entity that is ungovernable. Because I do not have before me the parties or the quantum of proof that would justify reformation of the Operating Agreement to the detriment of creditors, *see In re Callier*, 251 B.R. 850, 857 (B.A.P. 8th Cir. 2000), it would not be appropriate for me to modify the agreement in this context.

For these reasons, even if I were persuaded that the Debtor's organization of the Company failed to achieve a very specific ownership structure that he had in mind, I would see no legal or practical alternative but to leave the Debtor's property interests as they now exist under the terms of the Operating Agreement. Particularly in the context of an objection to a claim of exemption, the gulf between what the Debtor hoped to accomplish and what he actually did is too wide for him to bridge with his evidence of intent.[3]

---

[3] This is not to say that the Debtor had no remedy after he first formed the Company in 2011. Spouses may re-convey their assets to establish a tenancy by the entirety, though they may not defraud creditors in the process. *Compare Kluck v. Metsger*, 349 S.W.2d 919, 921 (Mo. 1961) (husband's transfer of property to himself and wife established tenancy by the entirety),

(footnote continued)

### 2. The Debtor's evidence of post-formation conduct does not establish a tenancy by the entirety.

Evidence of what occurs after a contract has been executed—that is, the parties' course of performance—is not barred by the parol evidence rule. *See Melson v. Traxler*, 356 S.W.3d 264, 272-73 (Mo. Ct. App. 2011). However, a course of performance "at variance with the plain terms written in the contract, will not control; but the contract is to be construed as written." *Leggett v. Missouri State Life Ins. Co.*, 342 S.W.2d 833, 877 (Mo. 1960) (cleaned up). The rule of *Leggett* is distinct from the parol evidence rule but may have the same effect in many situations. Consistent with my approach to the parol evidence rule above, I will assume for purposes of analysis that I could use the Debtor's evidence, if it were sufficiently persuasive, to vary the terms of the Operating Agreement.

The evidence of course of performance has two basic components. The first is the Debtor's testimony that he and Jane did not make the initial capital contributions called for in the Operating Agreement and that the Company did not maintain capital accounts thereafter. This informality shows that the Company was not operated as one would expect if it were owned by investors dealing at arm's length. But the inference that the Debtor asks me to draw is that informality is particularly consistent with tenancy by the entirety. I do not believe that inference to be sound. It would not be surprising to see that spouses who own a business as joint tenants or as owners of discrete equity interests operate with approximately the same degree of informality.[4]

The other component of course of performance is the Bartons' 2022 tax returns.[5] The Debtor argues that the treatment of the Company as a disregarded entity through the filing of

---

*with Konopasek v. Konopasek*, No. SC 99816, 2023 WL 4201660, at *8 (Mo. June 27, 2023) (husband's deposit of settlement proceeds into entirety bank account was fraudulent transfer). Reformation or other equitable remedies also might have permitted the Debtor to adjust the nature of his interest in the Company. *See Corrigan v. Tiernay*, 13 S.W. 401, 402 (Mo. 1890).

[4] The Debtor also asserts in his post-hearing brief that all proceeds from the Company were deposited into a bank account owned by the Bartons as tenants by the entirety. This course-of-performance evidence is not in the record, but it would not be persuasive if it were. Many spouses combine their separate assets (particularly the salaries and wages that they earn individually) in a joint bank account, but that does not change the individual nature of the assets before they are pooled.

[5] The Debtor testified that the Company has been treated as a disregarded entity since its organization in 2011, but only the 2022 tax returns were offered into evidence. For
(footnote continued)

a Schedule C shows his intent to hold the membership interests in a tenancy by the entirety with Jane. I disagree, for two principal reasons. First, the Debtor testified that he provided financial records to his accountant and requested that she prepare appropriate tax returns. It was the accountant, not the Debtor, who made the decision to file a Schedule C. And it is not clear that the accountant had a copy of the Operating Agreement, which might have led her to prepare the returns differently.[6] Second, the returns as filed are not particularly consistent with a tenancy by the entirety. Only the Debtor is identified as the proprietor of the Company on Schedule C, and the Missouri return attributes the losses of the Company to the Debtor alone. Thus, if I were to attempt to determine the nature of the Debtor's ownership interest from the tax returns alone, I might conclude that he is the sole owner of the Company.

### D. *Capital Bank*, Which Involved an Unincorporated Business, Is Distinguishable.

*Capital Bank* probably provides the strongest support for the Debtor's position. In that case, the court held that the assets of an unincorporated restaurant business were held by a husband and wife as tenants by the entirety. *See* 277 S.W.3d at 783. Among other things, the court relied on the spouses' joint ownership of the real estate underlying the business, their joint liability on loans secured by the assets of the restaurant, their involvement in operating the business together, and the deposit of restaurant income in a bank account held by the spouses as tenants by the entirety. *See id.* at 782-83. The court found less persuasive tax returns and government licenses that listed only the husband as proprietor of the restaurant. *See id.* at 783.

The fundamental difference between *Capital Bank* and this case is that the Bartons established their business as a limited-liability company. The direct ownership of business assets that is characteristic of a sole proprietorship, as in *Capital Bank*, is well recognized, but equity interests in an incorporated business are different. The Company has its own assets and liabilities, distinct from those of the Bartons. The question here is whether the Bartons' equity interests in the Company are held severally or jointly. Evidence of the Bartons'

---

purposes of analysis, I assume that the Debtor's tax returns for prior years are fundamentally similar.

[6] As discussed above, the agreement states that the Company will be treated as a corporation for tax purposes. Even a single-member LLC cannot use Schedule C if the member has elected to treat it as a corporation. *See* Internal Revenue Service, *2022 Instructions for Schedule C*, C-2 (Jan. 25, 2023), https://www.irs.gov/pub/irs-pdf/i1040sc.pdf. And a "qualified joint venture," a different tax status that may permit the filing of a Schedule C, does not include "a business owned and operated by spouses through a LLC." *Id.*

interactions with the Company, including their involvement in its operations and their deposit of profits into a joint bank account, tends to show that the Debtor is not the sole owner of the Company. But there is no dispute about that. The Operating Agreement indicates that he has a 50% interest, distinct from Jane's 50% interest, and the extrinsic evidence presented by the Debtor does not demonstrate otherwise.

If the facts of *Capital Bank* were different—for example, if the husband alone owned the real estate, a catering van were titled in the wife's name, the husband had inherited a set of copper pots from his grandmother, and so on—there is no reason to think that the Missouri courts would have concluded that the couple owned the restaurant, or any particular asset, as tenants by the entirety. The result of this case is no different from this hypothetical variation on *Capital Bank*. The Bartons' ownership interests in the Company are parallel, and they are related, but they are not joint. It follows that the Bartons are not tenants by the entirety.

### III. Conclusion

For these reasons, I will grant a separate order sustaining the Trustee's Objection and authorizing the Trustee to administer the Debtor's interest in the Company as property of the estate.

Dated: December 21, 2023
St. Louis, Missouri
cjs

                                                  Brian C. Walsh
                                                  United States Bankruptcy Judge

Copies to:

**Jeffrey R Barton**
648 Windy Trail Lane
Saint Clair, MO 63077

**Andrew R Magdy**
Schmidt Basch, LLC
1034 S. Brentwood Blvd.
Ste 1555
St. Louis, MO 63117

**Tracy A. Brown**
Tracy A. Brown Chapter 7 Trustee
1034 South Brentwood Blvd
Suite 725
St Louis, MO 63117

**Brian James LaFlamme**
Summers Compton Wells LLC
903 S. Lindbergh
Suite 200
St. Louis, MO 63131-2934

**Office of US Trustee**
111 S Tenth St, Ste 6.353
St. Louis, MO 63102